The Hon. Paula McCandlis

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. MJ20-560 |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| JESUS DANIEL LERMA-JARAS, and | |
| LIONEL GONZALEZ-TORRES, | |
| Defendants. | |

BEFORE United States Magistrate Judge Paula McCandlis, Seattle, Washington.

The undersigned complainant being duly sworn states:

## <u>COUNT 1</u>
### Conspiracy to Distribute Heroin and Methamphetamine

Beginning on a date unknown, but within the last five years, and continuing until on or about February 13, 2020, in King, Snohomish, and Skagit Counties, within the Western District of Washington, and elsewhere, JESUS DANIEL LERMA-JARAS, LIONEL GONZALEZ-TORRES, and others known and unknown, did knowingly and intentionally conspire to distribute controlled substances, including methamphetamine and heroin, substances controlled under Title 21, United States Code, Section 812, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 846.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The United States further alleges that with respect to JESUS DANIEL LERMA-

2 JARAS and LIONEL GONZALEZ-TORRES, their conduct as members of the

3 conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of

4 other members of the conspiracy charged in Count 1, involved 50 grams or more of

5 methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a

6 mixture or substance containing a detectable amount of methamphetamine, its salts,

7 isomers, or salts of its isomers, in violation of Title 21, United States Code, Section

8 841(b)(1)(A).

9    The United States further alleges that with respect to JESUS DANIEL LERMA-

10 JARAS and LIONEL GONZALEZ-TORRES, their conduct as members of the

11 conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of

12 other members of the conspiracy charged in Count 1, involved 1,000 grams or more of a

13 mixture or substance containing a detectable amount of heroin, in violation of Title 21,

14 United States Code, Section 841(b)(1)(A).

15    All in violation of Title 21, United States Code, Section 846.

16

17 **COUNT 2**
18 **Distribution of Heroin**

19    On or about October 25, 2018, in Snohomish County, within the Western District

20 of Washington, JESUS DANIEL LERMA-JARAS and LIONEL GONZALEZ-TORRES

21 did knowingly and intentionally distribute, and aid and abet the distribution of, a

22 controlled substance, to wit: heroin, a substance controlled under Title 21, United States

23 Code.

24    The United States further alleges that this offense was committed during and in

25 furtherance of the offense alleged in Count 1 (conspiracy).

26    All in violation of Title 21, United States Code, Sections 841(a)(1) and

27 841(b)(1)(C), and Title 18, United States Code, Section 2.

28

Complaint - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNT 3
### Distribution of Heroin

On or about November 2, 2018, in Snohomish County, within the Western District of Washington, JESUS DANIEL LERMA-JARAS did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, to wit: heroin, a substance controlled under Title 21, United States Code.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT 4
### Distribution of Methamphetamine

On or about November 6, 2018, in Snohomish County, within the Western District of Washington, JESUS DANIEL LERMA-JARAS did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, to wit: methamphetamine, a substance controlled under Title 21, United States Code.

The United States further alleges that this offense involved 5 grams or more of methamphetamine, its salts, isomers, or salts of its isomers.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 5
### Possession of Heroin with Intent to Distribute

On or about November 27, 2018, in Snohomish County, within the Western District of Washington, JESUS DANIEL LERMA-JARAS did knowingly and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

intentionally possess, with the intent to distribute, and aid and abet the possession of with the intent to distribute, controlled substances, to wit: heroin, a substance controlled under Title 21, United States Code.

The United States further alleges that this offense involved 100 grams or more of a mixture or substance containing a detectable amount of heroin.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 6
### Possession of a Stolen Firearm

On or about November 27, 2018, in Snohomish County, within the Western District of Washington, JESUS DANIEL LERMA-JARAS did knowingly possess the following three stolen firearms, to wit: (1) a Smith & Wesson, model SD9VE, 9mm semiautomatic pistol bearing serial number FYS8056, (2) a Glock, model 43, 9mm semiautomatic pistol bearing serial number BCTL543, and (3) a Glock, model 23, .40 caliber semiautomatic pistol bearing serial number BDNR061, all of which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearms were stolen.

All in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2).

## COUNT 7
### Distribution of Heroin and Methamphetamine

On or about May 29, 2019, in Snohomish County, within the Western District of Washington, LIONEL GONZALEZ-TORRES did knowingly and intentionally distribute, and aid and abet the distribution of, controlled substances, to wit: heroin and methamphetamine, substances controlled under Title 21, United States Code.

Complaint - 4

The United States further alleges that this offense involved 5 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

The United States further alleges that this offense involved 100 grams or more of a mixture or substance containing a detectable amount of heroin.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 8
### Distribution of Heroin and Methamphetamine

On or about June 12, 2019, in Snohomish County, within the Western District of Washington, LIONEL GONZALEZ-TORRES did knowingly and intentionally distribute, and aid and abet the distribution of, controlled substances, to wit: heroin and methamphetamine, substances controlled under Title 21, United States Code.

The United States further alleges that this offense involved 5 grams or more of methamphetamine, its salts, isomers, or salts of its isomers.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) and (C), and Title 18, United States Code, Section 2.

## COUNT 9
### Possession of Heroin and Methamphetamine with Intent to Distribute

On or about June 20, 2019, in Snohomish and Skagit Counties, within the Western District of Washington, LIONEL GONZALEZ-TORRES did knowingly and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  intentionally possess, with the intent to distribute, and aid and abet the possession of with
2  the intent to distribute, controlled substances, to wit: methamphetamine and heroin,
3  substances controlled under Title 21, United States Code.

4      The United States further alleges that this offense involved 50 grams or more of
5  methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a
6  mixture or substance containing a detectable amount of methamphetamine, its salts,
7  isomers, or salts of its isomers.

8      The United States further alleges that this offense involved 100 grams or more of a
9  mixture or substance containing a detectable amount of heroin.

10     The United States further alleges that this offense was committed during and in
11 furtherance of the offense alleged in Count 1 (conspiracy).

12     All in violation of Title 21, United States Code, Sections 841(a)(1) and
13 841(b)(1)(A) and (B), and Title 18, United States Code, Section 2.

14
15                         **COUNT 10**
16           **Distribution of Heroin and Methamphetamine**

17     On or about July 31, 2019, in King County, within the Western District of
18 Washington, JESUS DANIEL LERMA-JARAS and LIONEL GONZALEZ-TORRES
19 did knowingly and intentionally distribute, and aid and abet the distribution of,
20 controlled substances, to wit: methamphetamine and heroin, substances controlled under
21 Title 21, United States Code.

22     The United States further alleges that this offense involved 5 grams or more of
23 methamphetamine, its salts, isomers, or salts of its isomers.

24     The United States further alleges that this offense was committed during and in
25 furtherance of the offense alleged in Count 1 (conspiracy).

26     All in violation of Title 21, United States Code, Sections 841(a)(1) and
27 841(b)(1)(B) and (C), and Title 18, United States Code, Section 2.

28

Complaint - 6

## COUNT 11
### Distribution of Heroin

On or about February 13, 2020, in King County, within the Western District of Washington, JESUS DANIEL LERMA-JARAS and LIONEL GONZALEZ-TORRES did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, to wit: heroin, a substance controlled under Title 21, United States Code.

The United States further alleges that this offense involved 100 grams or more of a mixture or substance containing a detectable amount of heroin.

The United States further alleges that this offense was committed during and in furtherance of the offense alleged in Count 1 (conspiracy).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

**The undersigned, Kailund Williams, complainant being duly sworn states:**

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since June 2019. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. I have participated in investigations of individuals who have smuggled, received and distributed controlled substances, including heroin, cocaine and methamphetamine, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs.

3.      In my role as a Special Agent for the Drug Enforcement Administration, I have participated in investigations of individuals who have smuggled, received and distributed controlled substances, including heroin, cocaine and methamphetamine, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs. Additionally, I have participated in an investigation involving the interception of wire and electronic communications and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones, and their use of numerical codes and code words to conduct their illegal transactions.

4.      In writing this affidavit, I specifically consulted with DEA Special Agent Kevin Palermo, who is the lead agent for the case for which this affidavit is written. Agent Palermo has managed and been involved in this investigation since its commencement in December 2018. Agent Palermo has been employed as an agent for the DEA since August 2016. During his employment, Agent Palermo has also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, Agent Palermo has monitored, listened to, and reviewed transcripts and line sheets both in English and Spanish (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to thwart law enforcement. Prior to his employment as a DEA Agent, Agent Palermo was employed as a police officer in the Village of Lincolnshire in Lake County, Illinois, from December 2014 to August 2016. In that capacity, Agent Palermo was responsible for

Complaint - 8

1 │ providing and promoting public safety in the Village of Lincolnshire and the State of

2 │ Illinois.

3 │      5.      This affidavit is made in support of a complaint against JESUS DANIEL

4 │ LERMA-JARAS and LIONEL GONZALEZ-TORRES for Possession of a Controlled

5 │ Substance with Intent to Distribute, Distribution of Controlled Substances, and

6 │ Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States

7 │ Code, Section 841(a), 841(b)(1)(A)(B) & (C), and 846; and against JESUS DANIEL

8 │ LERMA-JARAS for Possession of a Stolen Firearm, in violation of Title 18, United

9 │ States Code, Sections 922(j) and 924(a)(2).

10 │                               **Summary of Probable Cause**

11 │      6.      In late 2018, a Seattle Police Department (SPD) confidential source (CS)

12 │ informed detectives of a Hispanic male, known to him/her as "Primo" and later identified

13 │ as JESUS DANIEL LERMA-JARAS, who sold large amounts of narcotics.[1] The CS

14 │ explained that "Primo" lived in Everett, Washington, drove a newer blue in color Dodge

15 │ truck, and utilized the cellular phone number 714-650-0582. Detectives conducted a

16 │ search of the cellular phone number in law enforcement databases and discovered that the

17 │ SRDGTF had identified the user to be LERMA-JARAS. During their investigation, an

18 │ SRDGTF CS purchased narcotics from one of LERMA-JARAS's runners, William Mota

19 │ (the registered owner of a blue Dodge truck). During that investigation, SRDGTF

20 │ detectives were also able to identify another one of LERMA-JARAS's runners, LIONEL

21 │

22 │

23 │ _____

24 │ [1] The CS has provided reliable and accurate information on numerous crimes and criminal activity that have been
     verified by agents. The CS was previously arrested on a state narcotics violation and is cooperating with agents

25 │ under an active cooperation agreement with the Seattle PD in exchange for charging considerations. In addition to
     the more recent narcotics arrest, a criminal history check revealed the CS has a history, which includes two felony

26 │ narcotics convictions. The CS also has arrests/convictions for obstructing a Law Enforcement Officer (resulted in a
     conviction), controlled substance felony (no charges filed), reckless burning (gross misdemeanor conviction),

27 │ disorderly conduct (misdemeanor conviction), reckless driving (gross misdemeanor conviction), driving while
     license suspended (dismissed), and possession of burglary tools (citation). The CS has admitted to agents to having

28 │ sold narcotics in the past and has described how such drugs are packaged and distributed.

Complaint - 9

GONZALEZ-TORRES. The SRDGTF detectives provided a photograph of LERMA-JARAS to SPD detectives and the SPD CS identified LERMA-JARAS as "Primo."

7.      In October 2018, the SPD CS called detectives to explain that LERMA-JARAS had called him/her and said that he was coming over to see the CS. Detectives were unable to respond to the CS's location to cover the meet, so detectives advised the CS to call them after LERMA-JARAS left. The CS called back as instructed and advised that he/she just finished meeting with LERMA-JARAS and that LERMA-JARAS said he had several kilograms of heroin with him, but the CS was only shown one kilogram. The CS stated that LERMA-JARAS gave him/her a sample of the heroin and later turned over that sample (1.5 grams of heroin) to detectives.

8.      Several days later, the CS called and advised that LERMA-JARAS had called and texted him/her from different cellular phone numbers (323-994-0290 and 901-573-4120). Several controlled buys and a large seizure of drugs and guns followed, summarize din the following chart and described below.[2]

| Date | Operation | Heroin | Meth |
|---|---|---|---|
| 10/25/18 | **Controlled Buy - SPD CS** | **29.5 g** | -- |
| 11/2/18 | **Controlled Buy - SPD CS** | **50.1 g** | -- |
| 11/6/18 | **Controlled Buy - SPD CS** | -- | 28.5 g |
| 11/27/18 | **Arrest and Search** | **473.4 g** | 2.3 g |

9.      **October 25, 2018 Controlled Buy (Count 2).**  On October 25, 2018, the CS called LERMA-JARAS on 901-573-4120 and ordered an ounce of heroin. LERMA-JARAS said he was having problems with his truck and eventually called the CS to explain that he was sending one of his runners, who would be driving a black Jeep Cherokee. Another male then called the CS and advised he would be right there.

---

[2] An uncontrolled purchase by the CS of approximately 250 grams of heroin on November 26, 2018, is not being charged.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Moments later, a male later identified as GONZALEZ-TORRES arrived at the agreed

2  upon meet location in Everett and provided the CS with an ounce of heroin (29.5 grams).

3      10.   **November 2, 2018 Controlled Buy (Count 3).**  On November 2, 2018, the

4  CS called LERMA-JARAS on 901-573-4120 and left a voicemail.  Shortly thereafter

5  LERMA-JARAS called back and the CS ordered an ounce of heroin and an ounce of

6  methamphetamine. LERMA-JARAS agreed to meet in Everett. LERMA-JARAS was

7  followed from his residence to the meet location, where a surveillance officer on scene

8  observed LERMA-JARAS approach the CS's vehicle and engage in a discussion prior to

9  removing a package from his pant's pocket and handing to the CS through the open

10  window. Surveillance officers followed LERMA-JARAS back to his house immediately

11  after the deal. The CS turned over the package received from LERMA-JARAS; it

12  contained close to two ounces of heroin (50.1 grams). The CS explained that LERMA-

13  JARAS had given him/her a larger amount of heroin since he (LERMA-JARAS) only

14  had scraps of methamphetamine left, which LERMA-JARAS said were not good for

15  resale. LERMA-JARAS also told the CS he was getting a shipment of methamphetamine

16  in the next few days and would advise the CS when it arrived.

17      11.   **November 6, 2018 Controlled Buy (Count 4).**  On November 6, 2018, the

18  CS called LERMA-JARAS on 901-573-4120 and the call went to voicemail. Seconds

19  later, LERMA-JARAS called back and the CS ordered an ounce of methamphetamine.

20  Surveillance officers positioned outside LERMA-JARAS's residence observed him travel

21  to a storage unit. When the CS called to see how much longer LERMA-JARAS was

22  going to be, LERMA-JARAS explained he could not get the methamphetamine because

23  there was construction blocking the door (to the storage unit) and he would need another

24  hour or so. An hour later, LERMA-JARAS returned to the storage facility and accessed

25  Unit A1005, which was rented in his name, and drove directly to the meet location in

26  Everett where detectives observed a hand-to-hand exchange with the CS. The

27  methamphetamine delivered weighed 28.5 grams.

28

Complaint - 11

12.     **November 27, 2018 Arrest and Seizure (Counts 5 and 6).** On November 27, 2018, detectives executed a search warrant for LERMA-JARAS's residence (11426 3rd Place West, Unit B, Everett, Washington), blue Dodge truck, white Jeep Cherokee and storage unit. LERMA-JARAS and his 20-year-old son were present during the search. Investigators recovered the following items: a bag containing roughly a pound of heroin (473.4 grams), a small bag of methamphetamine (2.3 grams) and cocaine (16.0 grams), five firearms, several digital scales, packaging material, a few drug ledgers and couple of wire transfers receipts. Most of these items were recovered from the garage.

13.     **LERMA-JARAS's Statements to Investigators**. SPD Detective Lazarou read LERMA-JARAS his Miranda warnings in English. When asked if he understood those rights, LERMA-JARAS said no. Detective Lazarou then asked LERMA-JARAS if he wanted them in Spanish and LERMA-JARAS said yes. Detective Lazarou then had LERMA-JARAS read the Miranda warnings from a Spanish Miranda card. After LERMA-JARAS was done reading, Detective Lazarou asked if he understood and LERMA-JARAS said yes. Detectives then gave LERMA-JARAS a copy of the search warrant, and explained that a Superior Court King County Judge had authorized law enforcement to search his residence, vehicle and storage unit. LERMA-JARAS looked over the warrant and said he understood.  When asked where the keys to his vehicle and storage unit were, LERMA-JARAS pointed out where the keys were for the vehicle and storage unit. Throughout the contact, LERMA-JARAS spoke English and communicated with Detectives Lazarou and Wantland without issues.

14.     LERMA-JARAS was then asked about the location of the narcotics, guns and money within his residence, vehicles and storage unit. LERMA-JARAS was not truthful and when asked specific questions he would not give a direct answer. LERMA-JARAS then told the detectives that he should speak with an attorney.  Detective Lazarou explained to LERMA-JARAS that since he asked for an attorney they had to stop asking him any further questions. A few seconds later, LERMA-JARAS began speaking to the detectives. The detectives had not asked LERMA-JARAS any questions; his comments

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  were unsolicited. At that point, Detective Wantland asked LERMA-JARAS if he wanted
2  to continue speaking with them and LERMA-JARAS stated yes.  Detective Lazarou then
3  instructed LERMA-JARAS to re-read his Miranda rights from the Spanish Miranda card.
4  Once finished, LERMA-JARAS stated he understood and wanted to speak to them.

5          15.     LERMA-JARAS was then asked about where the narcotics were located
6  inside his residence. LERMA-JARAS said the only narcotics detectives would locate
7  would be in the garage and nodded to their location. Detective Wantland then located a
8  large zip lock bag on the floor of the garage, which had a large amount of suspected
9  heroin inside. LERMA-JARAS stated the contents inside the large zip lock bag were
10 heroin. While speaking with LERMA-JARAS, detectives were notified that several
11 handguns were located, one of which was located inside an eave just outside of the front
12 door of the residence. The handgun was tightly wrapped in saran-wrap. Also, located
13 inside the eave were two large digital scales and two magazines for the handgun. They
14 were also saran- wrapped. LERMA-JARAS was asked how many guns were inside the
15 residence. LERMA-JARAS said he had about six guns inside his residence and stated
16 that he kept one in the night stand next to his bed. Detectives asked LERMA-JARAS if
17 he took the guns in trade for narcotics.  LERMA-JARAS said he did and explained that
18 he has a fascination for guns. When asked if any of the guns were stolen, LERMA-
19 JARAS said he was positive all the guns were stolen since he got them from the streets
20 and drug users.[3] LERMA-JARAS was asked why one of the guns was wrapped in saran
21 wrap and he explained that he sometimes gives guns to his narcotic's supplier and that
22 they get taken down to California and possibly further south. LERMA-JARAS also stated

---

[3] Records check revealed that three of the five recovered firearms were stolen:

- **Smith & Wesson, SD9VE, 9mm semi-auto (FYS8056)** (STOLEN on 5/1/18 - Snohomish 2018-58517)
- **Glock MOD43, 9mm semi-auto (BCTL543)** (STOLEN on 6/6/18 – Snohomish 2018-76862)
- **Glock 23, 40 caliber semi-auto (BDNR061)** (STOLEN on 4/8/18 – Everett 2018-4687)

Complaint - 13

1  that he put the gun in the eave. LERMA-JARAS then went on the say that he has been in

2  the country for 20 years and has been selling narcotics for his dealer since April or May

3  of this year (2018).

4       16.      Records check revealed that three of the five recovered firearms were

5  stolen:

6       •  **Smith & Wesson, SD9VE, 9mm semi-auto (FYS8056)**
7          (STOLEN on 5/1/18; Snohomish 2018-58517)

8       •  **Glock MOD43, 9mm semi-auto (BCTL543)** (STOLEN on
          6/6/18; Snohomish 2018-76862)

9       •  **Glock 23, 40 caliber semi-auto (BDNR061)** (STOLEN on
10         4/8/18; Everett 2018-4687)

11      17.      **2019 OPNET Investigation into GONZALEZ-TORRES.**  An individual

12 arrested by the Olympic Peninsula Narcotic Enforcement Team ("OPNET") detectives

13 (hereinafter "OPNET CS") explained that he/she purchased 6 to 20 ounces of heroin and

14 methamphetamine from a young Hispanic male named "Lionel" who used phone number

15 360-707-8026.[4] The OPNET CS explained to investigators that he/she had been

16 purchasing narcotics from Lionel for about six months and described the transactions in

17 detail. The OPNET CS explained he/she would contact Lionel, place the order and take

18 the ferry from Kingston, Washington to Edmonds, Washington to meet Lionel on the

19 Edmonds side. The OPNET CS would try to make the meet quick so he/she could return

20 to Kingston on the same ferry.

21      18.      OPNET learned that the user of 360-707-8026 had been identified by

22 SRDGTF as GONZALEZ-TORRES. As a result, the OPNET CS was shown a

23 photograph of GONZALEZ-TORRES and he/she identified GONZALEZ-TORRES as

24

25  _____

26 [4] The OPNET CS (Olympic Peninsula Narcotic Enforcement Team) is an informant who cooperated after his/her
   arrest on narcotics-related charges in 2019. Upon arrest, the OPNET CS immediately cooperated with law

27 enforcement and provided a detailed statement of their involvement in the illicit narcotics dealing to include
   customers, suppliers, and trends within the illicit drug culture. The OPNET CS identified one of his/her suppliers as

28 "Lionel" and provided the phone number used by "Lionel."

Complaint - 14

the person he/she knew as "Lionel." Several controlled buys followed, which led to the arrest of GONZALEZ-TORRES and a large seizure of drugs from him and his residence. These controlled purchased are summarize din the following chart and described below:

| Date | Event | Heroin | Meth |
|------|-------|--------|------|
| 5/29/19 | Controlled Buy - OPNET CS | 124.7 g | 58.2 g |
| 6/12/19 | Controlled Buy - OPNET CS | 101.2 g | 28.9 g |
| 6/20/19 | Order Up / Arrest | 405.1 g | 33.9 g |
| | Search of Home | 51.5 g | 1,476.2 g |

19.    **May 29, 2019 Controlled Buy (Count 7).**  On May 28, 2019, the OPNET CS contacted GONZALEZ-TORRES using cell number 360-707-8026 and placed an order for 4.5 ounces of heroin and 2 ounces of methamphetamine. The following day, after traveling on the ferry from Kingston to Edmonds, the CS waited for GONZALEZ-TORRES, who sent the CS a text to inform him/her that he would be arriving in a gold Chevy Malibu. GONZALEZ-TORRES also called the CS in an effort to locate him/her. The body wire worn by the CS captured this call and their subsequent meeting.

20.    About this time, a surveillance officer observed a gold Malibu arrive (registered to GONZALEZ-TORRES). Detectives identified GONZALEZ-TORRES as the driver. The CS entered the passenger side of the Malibu and GONZALEZ-TORRES then drove a short distance and parked along the side of the road. Investigators on the ground and in the air maintained visual contact with the Malibu. During this time, no one approached or contacted the Malibu besides the CS.  After several minutes, the Malibu returned to the parking lot and dropped the CS off. Once back in Kingston, the CS turned over the heroin (124.7 grams) and methamphetamine (58.2 grams) to detectives. The CS remained in view of the surveillance officers at all times.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    21.    **June 12, 2019 Controlled Buy (Count 8).**  On June 11, 2019, the OPNET

2  CS contacted GONZALEZ-TORRES using a new cell number 360-853-6044 and placed

3  an order for heroin and methamphetamine. The order was made via a text message.

4    22.    On June 12, 2019, while on the ferry in route to the deal, the CS received a

5  text message from GONZALEZ-TORRES, who advised the CS that he was waiting in

6  the parking lot in a black Mazda sedan. Surveillance officers observed GONZALEZ-

7  TORRES inside a black 2018 Mazda 6 sedan. Upon arriving in Edmonds, the CS entered

8  the Mazda and GONZALEZ-TORRES was overheard telling the CS (who was wearing a

9  body wire), "It's a little stronger than before. It's good." They then confirmed the price,

10  the exchange was made and the CS emerged from the Mazda. The CS turned over the

11  purchased heroin (101.2 grams) and methamphetamine (28.9 gram) to investigators while

12  in Edmonds.

13    23.    Air support maintained surveillance on GONZALEZ-TORRES, who

14  eventually returned the Mazda to a rental car company and got into a 2005 Jeep Wrangler

15  registred to LERMA-JARAS.  Investigators then drove to LERMA-JARAS's residence

16  (11426 3rd Place W, Unit B, Everett, Washington) and observed GONZALEZ TORRES's

17  gold Malibu parked outside. Air support observed the two men in the Jeep go to a storage

18  facility and retrieve a bag from one of the units before arriving back at LERMA-

19  JARAS's residence.

20    24.    **June 20, 2019 Arrest and Seizure (Count 9).**  On June 20, 2019,

21  investigators utilized the OPNET CS to order a pound of heroin and an ounce

22  methamphetamine from GONZALEZ-TORRES, who was arrested in Everett, on his way

23  to the meeting with the CS. Upon being removed from his car, GONZALEZ-TORRES

24  was patted down for weapons and the officer recovered a bag of heroin (405.1 grams) and

25  methamphetamine (33.9 grams) from his pants pocket. The package of drugs was

26  wrapped in dryer sheets.

27    25.    GONZALEZ-TORRES subsequently consented to a search of his Jeep and

28  signed a written consent to search form**.** Investigators recovered three phones from the

Complaint - 16

car and one from GONZALEZ-TORRES himself. When asked where he was taking the drugs, he said someone had dropped them off and he was taking them to someone in Seattle.

26.     GONZALEZ-TORRES consented to a search of his Burlington apartment and told investigators they would find around three pounds of methamphetamine, a small amount of heroin and roughly $6,000 in his room. When investigators could not locate the three pounds of methamphetamine, GONZALEZ-TORRES showed them where it was. Ultimately, investigators recovered two large packages of methamphetamine from a backpack (1,392.2 grams), a small package of cocaine on the windowsill (33.9 grams) and a small package of heroin under the mattress (43.1) grams.

27.     Investigators also noticed that the bathroom was a makeshift packaging station with baggies, gloves, scales and residue everywhere. Three additional baggies of cocaine (4.1 grams, 1.3 grams and 1.1 grams), one additional bag of methamphetamine (84.0 grams) and one additional bag of heroin (8.4 grams), and $7,540 were recovered from the bathroom.

28.     **GONZALES-TORRES's Statements to Investigators.**  Investigators transported GONZALEZ-TORRES to the Snohomish County Jail to book him on drug charges. During the transport, GONZALEZ-TORRES began talking to investigators more openly. When asked if he took precautions due to the increased use of fentanyl, GONZALEZ-TORRES said he used gloves to package the heroin because it is so sticky. When asked about the weights he distributed, GONZALEZ-TORRES explained that it is 25 grams for an ounce of heroin and 28 grams for an ounce of methamphetamine. When asked how much he would receive for dropping off the heroin and methamphetamine he had on his person. GONZALEZ-TORRES said the drugs were worth around $10,000 and he would receive a few hundred bucks. GONZALEZ-TORRES then explained that he had not been working, needed to pay rent and this was an easy way to make money.

29.     **2019-2020 SPD Investigation into LERMA-JARAS and GONZALEZ-TORRES.**  In July 2019, the SPD CS received a call from an individual known to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

him/her as "Isiad", who offered to introduce the CS to a local dealer. Ultimately, as will be described below, the CS eventually reached out to the local dealer, who investigators believe to be LERMA-JARAS, and arranged to make the following two controlled buys. On both occasions, GONZALEZ-TORRES arrived to deliver the drugs to the CS.

| Date | Event | Heroin | Meth |
|---|---|---|---|
| 7/31/19 | Controlled Buy - SPD CS1 | 25.6 g | 29.4 g |
| 2/13/20 | Controlled Buy - SPD CS1 | 128.4 g | -- |

30.    **July 31, 2019 Controlled Buy (Count 10).**  In late July, 2019, the SPD CS received a telephone call from "Isiad", who asked if the CS was still working (engaged in drug trafficking). At the direction of investigators, the CS said he/she was. Isiad then told the CS that he would provide the CS with a local contact for drugs and later provided the phone number 425-948-8033. On July 26, 2019, the CS engaged in the following exchange of text messages with the user of 425-948-8033, who investigators believe to be LERMA-JARAS[5]:

> CS:    Hi, Isaid gave me your number but he didn't give me your name, is there away we can meet on Monday to get a sample (of narcotics)?
>
> LJ:    What's up friend, the crazy guy talked to me, it's okay you just tell me the time and the weather and let me know if the road is cold frozen [methamphetamine] or if you prefer to drive pure asphalt [heroin].
>
> CS:    Hi, I don't know what your name I'm going out until Monday. I wanted to get a sample of a piece of night [heroin] and one of day [methamphetamine] to see how the merchandise is.

---

[5] On August 6, 2019, after the controlled buy being discussed, investigators obtained authorization to track this phone and the location information received consistently put the phone at LERMA-JARAS's residence located 11426 3rd Place West, Unit B, in Everett, Washington – the same residence that had been searched on November 27, 2018. In addition, on August 16, 2019, about two weeks after the controlled buy, investigators were able to put the phone in LERMA-JARAS's hands after the location information led them to a construction site where LERMA-JARAS was working. Once located, investigators followed LERMA-JARAS to a few other locations. His movements were consistent with the phone's location data.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2      LJ:     My name is ray friend.

3      LJ:     But when do you want the pictures?

4      LJ:     See you Monday.???

5
      LJ:     They will not have any complaints and if I did not like it, I would not
6                 be paid by the company.

7      CS:    Monday is when I return to Seattle

8
      LJ:     Does that mean you want them right now?
9

10     CS:    I do not return until Monday but what are your prices at night
                 [heroin] per piece [ounce] and how much for the day [methamphetamine]
11                 per pound

12    LJ:     Sorry I was having dinner with my boss.

13
      LJ:     Look friend it depends how many you grab [price depends on how
14                 much of the narcotics are purchased] but I'll recommend you. And the
                 crazy one knows that I don't like any complaint about my pull? He doesn't
15                 like anyone complaining about his work ethic or influence. If you take one
16                 [ounce of heroin], I'll give it to you for 800 [$800] or 2 [2 ounces of
                 heroin] for 750 [$750 for each ounce] but if I recommend 800 then you
17                 should give it [sell it] for 1000 [$1,000 per ounce] because my work is
                 100% clean [100% pure heroin]. And you will review it.
18

19     LJ:     I understand that you've been doing this a while so you would know
                 well what is at 100 [high purity drugs] and what isn't.
20

21     LJ:     And if they're given at 800 [$800 per ounce] fix them [cut the drugs
                 with another substance] because people now want quality they pay cheap
22                 so they cut it and give them it very expensive and no one wants to get
                 fucked.
23

24     LJ:     The water [methamphetamine] was left at 27 old [$2,700 per pound].

25     LJ:     Also that guaranteed [the quality of the methamphetamine is guaranteed,
26                 so the drugs can be returned if they are poor quality].

27     31.    On July 31, 2019, the CS exchanged the following series of text messages

28 with LERMA-JARAS, during which the CS asked for a "piece of brown and a water."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | CS: | Ray, my plan is to see you at 4, Northgate mall is that fine with you?

2 | LJ: | How about around 6 please, buddy ?

3
4 | LJ: | Around 4 I'm heading to pick up my mom at work.

5 | **CS:** | Ok Ray see you at 6, I need a piece of brown and a water, if everything goes well, in a couple days I'll buy much more from you, OK?

6
7 | LJ: | Ok, how do you like [it] friend, the dark powder or rocks/stone?

8 | CS: | Rocks/stone

9 | LJ: | Ok, because a lot of customers ask in powder and others in stone, but
10 | | everything is 100 [percent] clean [you're] not going to have complaints.

11 | LJ: | Sounds good, in case you like it don't hesitate asking because I wouldn't
12 | | want to tell you it's all gone or wait for a few days to arrive.

13 | CS: | Ok, we both agreed for 2 at 6, right?

14 | LJ: | Yes

15 | CS: | KeyBank in [the] parking lot I'm in the black 4 door Ford truck, [in] 10
16 | | minutes.

17 | LJ: | Ok, I'm on my way buddy, I'm going to give you another number.

18
19 Later, the CS received a phone call from 360-630-1791, believed to be used by

GONZALEZ-TORRES, to coordinate the meeting.

20       32.    Investigators gave the CS the buy money and equipped the CS with an

21 audio/video recording device. Investigators then followed the CS to the meet location: the

22 parking lot at Key Bank located at 353 NE Northgate Way, Seattle, Washington. At 6:20

23 p.m., an investigator observed GONZALEZ-TORRES arrive in his gold 2001 Chevy

24 Malibu. After parking near the CS, GONZALEZ-TORRES got out of his car and entered

25 the CS's truck. The CS and GONZALEZ-TORRES then drove through the Northgate

26 Mall parking lot and were followed by investigators.

27
28

Complaint - 20

33.     After a few minutes, they returned to the Key Bank parking lot and parted ways. The CS turned over the methamphetamine (29.4 grams) and heroin (25.6 grams) to investigators. The CS told investigators that he recognized GONZALEZ-TORRES from the earlier 2018 investigation, but it appeared he had put on weight. Other investigators followed GONZALEZ-TORRES back to LERMA-JARAS's Everett residence after the deal.

34.     **February 13, 2020 Controlled Buy (Count 11).**  At the end of January 2019, the CS reached back out to "Isiad" in an effort to obtain LERMA-JARAS's new phone (the CS explained to Isiad that he/she had been calling that guy to pick up merchandise, but he was not picking up). Isiad said he would pass the CS's number along to him (believed to be LERMA-JARAS). After a few more conversations, during which CS and Isiad discussed prices and quantities, CS1 began receiving text messages from 206-586-3621, who investigators again believe was LERMA-JARAS:

| 206-586-3621: | Buddy, how are you? "Say" [Isaid] told me that you might need something. |
|---|---|
| 206-586-3621 | Another guy would see you because that one didn't have to give you the paint [narcotics] at 300 and he was told at 200. |
| 206-586-3621 | Let me know what you are going to need and another guy would bring it to you. |
| CS1: | Okay, Who are you and who gave you this number? |
| 206-586-3621 | Say. [Isiad] |
| 206-586-3621 | Let me know if you are going to need something. My name is Cesar. |
| 206-586-3621 | I sent the same guy that gave you the things last time [believed to be a reference to GONZALEZ-TORRES]. It is just that there have been several times that he takes upon himself to charge more. I need help from my clients, not for them to leave my friend. |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35.     Following that exchange, the CS placed two calls to 206-586-3621; both were not answered. After the second attempted call, the CS received an incoming telephone call from 360-630-1791, the number previously used by GONZALEZ-TORRES. When the CS did not answer the call, the CS received the following two text messages from 360-630-1791: "My friend told me to call you. He is on a call and couldn't answer you." And "What are you in need for?"

36.     After receiving those text messages, the user of 206-586-3621 and the CS spoke on the phone.  The CS believed the user of 206-586-3621 was LERMA-JARAS, but could not be sure. In summary, the pair discussed prices of narcotics and how future transactions would occur. During the call, the user of 206-586-3621 stated another individual would be in contact to complete the narcotics transactions. CS1 asked what his name was. The user of 206-586-3621 stated the other individual was "Ricardo". CS1 asked if he/she should make future arrangements with "Ricardo" and the user of 206-586-3621 said yes. CS1 asked 206-586-3621 if he/she should call 206-586-3621 with any other types of concerns. 206-586-3621 said yes and the conversation continued about the user of 206-586-3621 being responsible for supervising quality. That same day, approximately 20 minutes later CS1 received a call from 360-630-1791 and the user (GONZAEZ-TORRES) identified himself as "Ricardo."

37.     After a failed attempt at a controlled buy on February 1, 2019, investigators successfully utilized the CS to purchase a quarter-pound of heroin from GONZALEZ-TORRES on February 13, 2020. The arrangements for the deal were made with "Ricardo" (GONZALEZ-TORRES) over 360-630-1791. Once the arrangements were made, investigators provided the CS with the buy money and followed him/her to the agreed upon meet location (a QFC parking lot at 1531 NE 145th Street, Seattle). Once there, an investigator observed GONZALEZ-TORRES waiting in the QFC parking lot inside his gold Malibu. Once the CS arrived, GONZALEZ-TORRES got out of his car and accessed both the engine compartment and passenger compartment and was observed

Complaint - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  holding items in his hands. While that was going on, the CS got into the driver's seat of

2  the Malibu before returning to his/her own vehicle and leaving.

3      38.     The CS then met with investigators and turned over a package of heroin

4  (128.4 grams), which the CS explained GONZALEZ-TORRES instructed him/her to

5  retrieve from under the driver's seat.

6      39.     Based on the aforementioned facts, I believe that JESUS DANIEL

7  LERMA-JARAS and LIONEL GONZALEZ-TORRES committed the offenses of

8  Possession of a Controlled Substance with Intent to Distribute, Distribution of Controlled

9  Substances, and Conspiracy to Distribute Controlled Substances, in violation of Title 21,

10  United States Code, Section 841(a), 841(b)(1)(A)(B) & (C), and 846; and that JESUS

11  DANIEL LERMA-JARAS also committed the offense of Possession of a Stolen Firearm,

12  in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2).

13

14

15                         KAILUND WILLIAMS, Complainant

16                         Special Agent, DEA

17      The above-named agent provided a sworn statement to the truth of the foregoing

18  complaint by in an open-court video hearing on this 1st day of September, 2020.  Based

19  on the Complaint and Affidavit sworn to by the above-named agent, the Court hereby

20  finds that there is probable cause to believe the defendant committed the offense set forth

21  in the Complaint.

22

23      DATED this 1st day of September, 2020.

24

25

26                         PAULA McCANDLIS

27                         United States Magistrate Judge

28

Complaint - 23